**LOCAL NO. 463, UNITED PAPERMAKERS & PAPERWORKERS, AFL–CIO, Plaintiff,**

v.

**The FEDERAL PAPER BOARD COMPANY, Inc., Defendant.**

Civ. No. 10758.

United States District Court
D. Connecticut.

March 11, 1965.

**46**

Norman Zolot, New Haven, Conn., Abraham Friedman, Rothbard, Harris & Oxfeld, Newark, N. J., for plaintiff.

Jay S. Siegel, Hartford, Conn., for defendant.

ZAMPANO, District Judge.

In this action plaintiff union seeks an order declaring an industrial dispute non-arbitrable and injunctive relief restraining defendant company from arbitration of the dispute. Jurisdiction is predicated upon Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

On July 23, 1964, one Michael McHale, an employee of the defendant company and a member of the plaintiff union, received a disciplinary suspension from work of six days without pay. A "walk-out" by many other employees of the company followed, which eventually resulted in a shutdown of the company's plant.

A meeting between the representatives of the union and the company ensued immediately, but it did not alter the situation. On July 24, 1964, the company notified the union it was submitting the dispute to the American Arbitration Association and was requesting the appointment of an arbitrator to order an end to the work stoppage. Despite the union's objections to arbitration on jurisdictional grounds, an arbitrator was designated and a hearing date set. The union thereupon brought this action to have the dispute declared non-arbitrable. In the meantime, on August 3, 1964, the employees returned to work and the plant has resumed normal operations.

The company has moved for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking judgment as a matter of law holding the dispute and the issue of damages arising out of the work stoppage arbitrable.

Relying on Drake Bakeries v. Bakery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962), the company contends the issue of the union's breach of the no-strike clause in the collective bargaining agreement between the parties is an arbitrable dispute within the provisions of that agreement and therefore must be resolved through arbitration. The union attempts to distinguish the Drake case and, relying on Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), decided the same day as Drake Bakeries, argues that resort to arbitration is exclusively the province of the union.

It is not contested that an alleged violation of the no-strike clause of the agreement is a "dispute" within the meaning of the contract. The sole question presented in the case is whether the grievance procedure under the collective bargaining agreement between the parties permits the company, as well as the union, to initiate a dispute which it could then take to arbitration.

In the Drake Bakeries case, supra, the Supreme Court, in affirming the union's move to stay an employer's court action for damages pending arbitration, held that the comprehensive language of the arbitration provisions of the collective bargaining agreement between the employer and the union obligated the company to arbitrate a claim for damages resulting from a forbidden strike by the union. In Atkinson, supra, the Supreme Court, in allowing an employer's court action for damages for a work

stoppage caused by the union in violation of a collective bargaining agreement, held that the specific exclusion of management from the arbitration machinery in the contract prohibited submission of grievances by the employer to arbitration.

In the instant case the collective bargaining agreement does not expressly obligate the employer to arbitrate, as in Drake Bakeries, nor does it specifically exclude the company from initiating an issue for arbitration, as in Atkinson. Here, the agreement, in Article X [1], contains a multi-step grievance procedure to resolve "any dispute or difference" which may arise between the parties. Three steps are established for negotiation of a dispute in the following manner: (1) a reference of the issue by the aggrieved employee to the shop steward and the foreman, and thereafter (2) to the union grievance committee and the plant superintendent, and thereafter (3) to the International Representative of the union and the union's grievance committee on the one hand, and the employer's representatives on the other. Step 4 provides that, if the matter is not adjusted within thirty days following the meeting under Step 3, "either party to the dispute" may submit the matter to arbitration.

After a careful comparison of the provisions of the instant agreement with those in Drake Bakeries and in Atkinson, and, after a review of relevant authorities, this Court concludes that the provisions in question are more attuned to those in Drake Bakeries and, therefore, this decision must be guided by the Supreme Court's ruling in that case.

At the outset it is noted the parties in this action appear in reverse of their traditional roles. Here the company seeks arbitration of an industrial dispute, normally the goal of the union. This role reversal, however, should in no way affect the "congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration"

proclaimed by the Supreme Court in United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), and buttressed by the companion cases of United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960); and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1960).

Consistent with congressional policy the Supreme Court pointed out in United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Specific matters, of course, may be excluded from arbitration, but "only the most forceful evidence of a purpose to exclude the claim from arbitration * * " can prevail in derogation of this established policy. 363 U.S. at 582, 585, 80 S.Ct. 1347.

In the instant case there is no specific exclusion of management from arbitration nor does the Court find such an exclusion by implication from the language of the agreement. On the contrary it appears that Step 3 of the grievance procedure may well be an appropriate stage for the company to institute an issue for negotiation and arbitration. This reasoning is strengthened by the clear language of Step 4 which provides that "either party" may thereafter call for the selection of an arbitrator.

It is true, as pointed out by the union, that the first two steps of the grievance procedure address themselves to grievances of employees. Although obviously designed to accommodate the majority of grievances which concern individual employees, it does not follow they are *sine qua non* conditions to the initiation of an issue at Step 3 of the procedure. Indeed, with respect to certain disputes,

---

1. Article X, is set forth in full, infra, as an Appendix.

48

the union itself may well desire to start negotiations with the company at the third stage of the procedure rather than at the first step. It hardly would seem appropriate, for example, to have resolution of differences concerning installation of new equipment or changes in the methods of production or claims of a lockout begin by an aggrieved employee talking it over with a plant foreman. See, Article X, section (j), and Article XI. This Court finds that the company, as well as the union, may commence negotiations over certain disputes at Step 3 and, therefore, "either party" may thereafter seek the aid of arbitration at the fourth level of the grievance procedure. See, Tenney Engineering, Inc. v. United Elec., R. & M. Wkrs., 174 F. Supp. 878, 879 (D.C.N.J.1959); Jefferson City Cabinet Co. v. International Union of Electrical Workers, 313 F.2d 231 (6 Cir. 1963).

Accordingly, defendant's motion for summary judgment is hereby granted. The motions to strike certain portions of affidavits submitted by the parties are denied as moot.

## APPENDIX TO DECISION

### ARTICLE X

### GRIEVANCE PROCEDURE

1. (a) Should any dispute or difference arise between the Employer and the Union as to the meaning, application, purpose or operation of any of the provisions of this agreement, including the suspension or discharge of any employee covered by this agreement, there shall be no suspension of work on account of such dispute or difference, but an earnest effort shall be made to adjust such disputes or differences, immediately, and in the following manner:

(b) Step 1. Between the aggrieved employee, his stop Steward and Foreman.

(c) Step 2. If the grievance is still unadjusted, then between the Grievance Committee of five members of the Union duly elected by the Union, and the Superintendent or Resident Manager, who may call in the Personnel Department. The grievance shall not be handled at this stage unless presented in writing, and the meeting shall be held at the earliest date mutually agreeable.

(d) Step 3. If the grievance is still unadjusted, within three days, it is to be submitted to the International Representative of the Union with the Grievance Committee of five members of the Union, and representatives of Management, which shall include the Vice-President, and in his absence, an authorized representative. Extension of the three day period can be made by mutual agreement.

(e) Step 4. Should the representatives of the Employer and of the Union fail to agree, then within 30 days following the meeting under Step 3, either party to the dispute may call upon the American Arbitration Association to select an arbitrator in the dispute, whose decision, when rendered, shall be final and binding on all parties.

(f) Arbitration is to be regarded as a last resort and to be invoked only in extreme cases so that absences from work and interruption of production necessitated by presence at arbitration hearings may be avoided.

(g) The arbitration shall proceed as expeditiously as possible. Each party is to pay its own expense. The fees of the arbitrator are to be borne equally by the parties. The award of the arbitrator shall be in writing and shall be final and binding and accepted by both parties. It may be enforced as a judgment in any Court having competent jurisdiction.

(h) Under all circumstances, the business of the Employer shall be continued without interference, and the Employer shall abide by all the provisions of this Agreement, during the period while a grievance is being adjusted and arbitrated, and until a final decision of the matter or matters at issue shall have been reached.

(i) All grievances not adjusted by the second step in the Grievance Pro-

cedure above set forth shall be reduced to writing by the aggrieved employee, or the Union in his behalf, submitting such grievance in writing to the Employer. The disposition of such grievance thereafter shall be in writing, and signed by the parties hereto.

(j) It is further agreed that the Employer may make revisions by addition to or deletion from this complement as a result of changes in or installation of new equipment, or changes in the process or methods of production. Prior to any such revision, every effort shall be made by negotiation to reach agreement between the Employer and the Union as to the number of men involved, any redistribution of duties required, and other factors in the change. If a dispute arises over the number of men required, the job will be studied with the present manning, and also with the proposed manning, and there shall be no final change in manning until settlement through negotiation, or arbitration in the event the Employer and the Union fail to agree.