### The BOEING COMPANY
### v.
### INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW, AFL-CIO), et al.

#### Civ. A. No. 36374.

United States District Court
E. D. Pennsylvania.
Oct. 7, 1965.

---

Robert M. Landis and Galen J. White, Jr., of Dechert Price & Rhoads, Philadelphia, Pa., for plaintiff.

Edward Davis and Alan R. Howe, Philadelphia, Pa., for defendants.

BODY, District Judge.

This is an action brought by the Boeing Company against the United Auto Workers International Union and its Local 1069 to recover substantial damages caused by a strike and illegal work stoppage alleged to have been in violation of the collective bargaining agreement between the parties in an industry affecting commerce. The jurisdiction of this Court is based primarily upon the provisions of Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C., Sections 141, 185, and secondarily upon diversity of citizenship under 28 U.S.C., Section 1332.

The Company filed its complaint on August 14, 1964, the day after the ten-day strike began. On September 4, 1964, the Union filed its Answer and a motion to stay proceedings, dismiss the complaint, and/or for summary judgment.

For the most part, the facts in the case relevant to defendant Union's motions are not in dispute. The plaintiff, The Boeing Company (hereinafter called the "Company"), a Delaware corporation with its principal place of business in Seattle, Washington, is engaged in the manufacture of aircraft, aerospace vehicles, parts and accessories and does business through its Vertol Division at its plants in Morton, Pennsylvania. The defendants, the International Union and Local 1069 of the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW, AFL-CIO), (hereinafter called the "Union"), are together the collective bargaining agent of

the production and maintenance employees under a collective bargaining agreement governing the wages, hours, and working conditions of such employees. This agreement was in effect at all times during the course of the alleged illegal work stoppage at plaintiff's Vertol Division at its plants in and about Morton, Pennsylvania.

At approximately 11:00 P.M. on August 13, 1964, a strike and work stoppage, accompanied by picketing, occurred at plaintiff's Vertol Division plants at Morton, Pennsylvania. Plaintiff alleged in its complaint that the Union, its representatives and members participated in the above occurrences, in violation of the no-strike clause in Article VII, Section 1 of the agreement which provides:

> The Union, its officers, and members agree that for the duration of this Agreement there shall be no strikes, sit-downs, slow-downs, stoppages of work, and that there will be no picketing of any kind. (Collective bargaining agreement, page 19; Complaint, Exhibit 1.)

In its Answer, defendant denied any participation by the Union, its officers or representatives in violation of the above-quoted section of their agreement. Instead, defendant alleges that the strike, work stoppage and attendant picketing were initiated and prolonged solely by certain employees of the Company without any authorization or encouragement by the Union, and further alleges that the Union, its officers and representatives complied at all times with the provisions of Article VII, Section 3 which stipulates:

> In the event that there is any strike, work stoppage, or other interference with production which is not authorized by the Union, the Company agrees that there shall be no liability on the part of the Union, provided that in the event of each

such unauthorized action the following conditions are met:

A. Within not more than twenty-four (24) hours after the occurrence of any such unauthorized action, the Union, its officers and representatives shall publicly disavow the same by posting a notice on the bulletin boards throughout the plant;

B. The Union, its officers and representatives shall immediately order its members to return to work, notwithstanding the existence of any wild-cat picket line;

C. The Union, its officers and representatives shall refuse to aid or assist in any way such unauthorized action; and

D. The Union, its officers and representatives will in good faith use every reasonable effort to terminate such unauthorized action.

(Collective bargaining agreement, pages 19–20; Complaint, Exhibit 1).

The case is now before this Court on the Union's motion to stay, dismissal and/or summary judgment.

### I.

### DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING FINAL AND BINDING ARBITRATION

The thrust of defendant Union's motion to stay proceedings is that this Court has no jurisdiction under Section 301 of the Labor Management Relations Act of 1947 because the Company was contractually obligated by the agreement to make a grievance out of the suit for damages and finally submit it to arbitration.

The Union contends that an examination of Articles V–A and VI of the agreement, which set forth the grievance and arbitration procedure, discloses that either party to the agreement may seek arbitration.[1] The Company, on the other

---

1. The Union places great emphasis on the phrase, "the party desiring arbitration," contained in numerous sections of Article VI. This phrase, argues the Union, when combined with Article VI, Section 5, which makes arbitrators' decisions final

hand, argues that the provision in Article VI, Section 7, makes it clear that the grievance procedure is an exclusive employee remedy, that the Company is not obligated to arbitrate and is therefore free to pursue its legal remedy in a damage suit in this federal district court under Section 301 of the Labor Management Relations Act.[2] Neither party contests the fact that an alleged violation of the no-strike clause of the agreement is a "dispute" within the meaning of the contract.

The sole issue presented is whether, under the agreement existing between the Union and Company when the strike occurred, the Company is compelled to submit its action for damages to arbitration, with the result that this Court is ousted of its statutory jurisdiction under Section 301 of the Labor Management Relations Act.

In support of its motion to stay proceedings, the Union relies primarily on the following three cases: Yale & Towne Mfg. Co. v. Local Lodge 1717, 299 F.2d 882 (3rd Circuit, 1962); Drake Bakeries, Inc. v. Local 50, American Baking & Confectionery Workers Int'l, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); and Local 463, United Paper Makers and

Paper Workers v. Federal Paper Board Co., Inc., 239 F.Supp. 45 (D.Conn.1965).

However, in all of these cases the collective bargaining agreement expressly provided that "either party" had the right to use the grievance and arbitration procedure.[3] In the instant case the agreement (Article VI, Section 7) provides that the grievance and arbitration procedure is the exclusive remedy for the disposition of any claim, dispute or grievance of any kind by an employee against the Company. (Contract, page 19; Exhibit 1, Complaint; see also footnote 2 of this opinion.)

It is our view that the controlling case in this instance is Atkinson v. Sinclair Refining Company, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), decided on the same day as Drake Bakeries, which held that where the arbitration provisions of a collective bargaining agreement are by the terms of the agreement foreclosed to the employer, then a motion for stay of the proceedings pending final arbitration will be denied. Since the Court there found that the Company had no recourse to arbitration it did not reach the question of whether the employer was bound to arbitrate a violation of the no-strike clause.

and binding on all the parties, is sufficient language upon which to rest its conclusion that either the Company or Union may seek arbitration. However, we are of the opinion that the proper interpretation of Section 5 of Article VI is simply that the employer as well as everyone else is bound by an arbitrator's decision on a grievance brought by an employee. That section, therefore, does not support the proposition set forth by the Union.

2. The language of the agreement which is relied on by the Company to sustain its proposition is Article VI, Section 7, which provides:

The grievance procedure provided under Article V–A as supplemented by this Article, shall be the *exclusive remedy* for the disposition of any claim, dispute or grievance of any kind *of an employee* against the Company. (Emphasis supplied.)

3. In the Yale & Towne case, 299 F.2d at 883, the agreement specifically provided

(1) that "*either party* may invoke the grievance procedure," which leads to arbitration and (2) that "all grievances and other disputes * * * which have not been satisfactorily adjusted (in the grievance procedure) may be submitted to arbitration at the election of *either party*." (Emphasis supplied.) In the Drake Bakeries case, 370 U.S. at page 257, 82 S.Ct. at page 1349, footnote 2, the contract expressly provided that "*either party* shall have the right to refer the matter to arbitration as herein provided." (Emphasis supplied.) Finally, in the Federal Paper Board case, wherein the Company brought an arbitration proceeding and the Union sought to enjoin same, the agreement provided in Step 4 of the grievance procedure that "*either party* to the dispute may call upon the American Arbitration Association to select an arbitrator in the dispute * * * whose decision, when rendered, shall be final and binding on all parties." 239 F.Supp. at 48.

It is true that in Atkinson, the Company was specifically excluded from the arbitration machinery. The Union, relying on Federal Paper Board, requests this Court to hold that where the collective bargaining agreement does not expressly exclude the Company from arbitrating or expressly obligate the Company to arbitrate, then a motion by the Union to stay proceedings pending arbitration be granted. Defendant Union's argument is not convincing. As indicated above, the grievance procedure in the Federal Paper Board case was open to "either party" at Step 4. Under the contract in the case at hand, however, the grievance procedure was never open to the Company and under the agreement the 4-step grievance procedure set forth in Article V–A was a sine qua non to arbitration. (Collective bargaining agreement, pages 13–14, Complaint, Exhibit 1.) The Court clearly points out in Federal Paper Board that Steps 2 and 3 of that grievance procedure were not sine qua non conditions either to an initiation of an issue at Step 3 or subsequent arbitration.

It is also interesting to note that from the record in this case it appears that in the entire history of collective bargaining between Company and Union, the Company has never filed and processed a grievance against the Union. (Company's Answer to Union's Motion for Stay, Paragraph 11.) In view of the foregoing this Court would in effect be rewriting the agreement between the parties if defendant Union's motion to stay were granted, and the rewriting of contracts is not within the province of this Court.

Defendant Union's motion to stay proceedings pending final arbitration will therefore be denied.

## II.

## DEFENDANT'S MOTION TO DISMISS COMPLAINT AND/OR FOR SUMMARY JUDGMENT

This phase of the Union's motion is based on certain paragraphs of its Answer to the Complaint which allege by way of defense that defendants did not authorize the work stoppage or picketing, or participate therein, and further that they discharged their contractual obligations required of them by Article VII, 3 A–D of the agreement.

Defendant has filed no affidavits in support of its motion. The only evidence in support of its motion for summary judgment other than its averments in the Answer, is the deposition taken of one Jack Cashmere, the President of Local 1069. In that deposition, Mr. Cashmere testified that the Union and officers refused to aid or assist the unauthorized stoppage. Instead several preventive and corrective steps were taken by him and other officers of the Union to terminate the strike and picketing, and such actions are alleged to have been adequate to satisfy their obligation under Article VII, 3 A–D of the agreement. On the basis of this deposition, defendant asks this Court to find as a matter of law that they are entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure and dismiss the complaint.

The point in dispute between the parties is whether the Union complied with its specific duties spelled out under Section 3 of Article VII. On that point we are urged to declare that the word of Mr. Cashmere establishes as a matter of law that the Union complied in all respects with that particular section and that the Union's Answer and Mr. Cashmere's deposition show that there is no genuine issue as to any material fact. However, the testimony of Mr. Cashmere itself raises many questions concerning the Union's compliance with the specific requirements of Article VII.

And even under the 1963 amendment to Rule 56(f), summary judgment will be denied where the evidence in support of the motion does not establish the absence of a genuine issue, even if no opposing evidentiary matter is presented. This is true especially when an issue as to a material fact cannot be resolved without observation of the de-

meanor of the witness in order to evaluate his good faith and credibility. (Amendments to Rules of Civil Procedure for the United States District Courts, Advisory Committee's Note, 83 Supreme Court Reporter, p. 74, 1963.)

Therefore, defendant Union's motion for summary judgment and/or to dismiss the complaint is denied.