**H. K. PORTER COMPANY, Inc., Conners Steel Division, West Virginia Works, Plaintiff,**

v.

**LOCAL 37, UNITED STEELWORKERS OF AMERICA, AFL–CIO, and United Steelworkers of America, AFL–CIO, Defendants.**

No. 2257.

United States District Court
S. D. West Virginia,
Huntington Division.

Feb. 24, 1967.

William C. Beatty, Huntington, W. Va., Huddleston & Bolen, Huntington, W. Va., for plaintiff.

James P. Clowes, Wheeling, W. Va., Clowes, McDermott & Ewing, Wheeling, W. Va., Carney M. Layne, Huntington, W. Va., Elliot Bredhoff, Washington, D. C., for defendants.

CHRISTIE, District Judge:

This matter is before the Court pursuant to defendants' (hereinafter called the Union) motion to dismiss the complaint, in that it fails to state a claim upon which relief can be granted. The action was instituted pursuant to Section 301 of the N.L.R.A. of 1947, 29 U.S.C.A. § 185,[1] (hereinafter called the Act) to recover damages alleged to have been caused by an unlawful work stoppage at plaintiff's Huntington, West Virginia plant (hereinafter called the Company), or in the alternative for an order compelling the Union to submit the matter to arbitration. In essence, the Union contends that the subject-matter about which the Company seeks arbitration is not a grievance within the meaning of Section 10 of the collective bargaining agreement—"ADJUSTMENT OF GRIEVANCES"—and that under Section 12—"NO-SUE CLAUSE"—the Company relinquished its right to institute civil suits or legal proceedings for violation of the contract, and that its only remedy under Section 13—"NO-STRIKE CLAUSE"—is the right to discipline employees responsible for or participating in the improper work stoppage or strike.

At the outset, it will be well to make certain observations concerning national labor relations law generally, which we, as all other federal courts, are bound to heed. Collective bargaining agreements are recognized as a special species of contracts to which general contract rules are not always applicable, and whether or not a matter is arbitrable is to be determined by the Court on the basis of the contract between the parties, John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898, for arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit. However, a finding that a particular grievance is not arbitrable should be made only when it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, with any doubt to be resolved in favor of coverage. United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L.Ed.2d 1409.

When, as here, the question is in essence whether a particular matter is arbitrable, the Courts have no cause to delve into the actual merits of the alleged grievance. They are limited to a determination as to its being subject to arbi-

1. "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

tration. Local Union No. 24, Int. Bro. of Elec. Wkrs. AFL–CIO v. Hearst Corp., 352 F.2d 957 (4th Cir. 1965).

From an examination of the present contract's four-step grievance procedure (see Appendix), it appears designed only for the handling of employee disputes against the Company, as the Union contends, and at no step is there mention of the Company's right to institute further proceedings, particularly at step 4, the arbitration clause. Thus, standing alone, this particular procedure would apparently exclude the Company from initiating a complaint against the Union. The Union buttresses this contention by relying upon Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed. 2d 462, in which an employer had instituted a civil action for damages allegedly caused by violation of a no-strike clause. The union sought to have the matter dismissed or stayed pending arbitration under the grievance procedure.[2] The Court held that the contract involved was not susceptible of a construction binding the company to arbitration on its claim for damages and, consequently, the suit was maintainable under Section 301 of the Act.

On the other hand, the Company relies upon the pronouncements in Drake Bakeries, Inc. v. Local 50, America Bakery and Confectionery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474, decided the same day as Atkinson, supra, in which the Court held that an employer's claim against the union for damages resulting from an alleged breach of the contract's "no-strike clause" was clearly within the scope of the arbitration provisions of the contract.[3]

We believe that the instant contract's provisions fall into a "no-man's land" between the two, wherein the Company is neither expressly excluded from instituting arbitration proceedings nor explicitly granted the privilege to do so.

The Company argues that the wording of the "NO-SUE CLAUSE" ("It is understood and agreed that neither party will institute civil suits or legal proceedings against the other for alleged viola-

2. The pertinent sections are as follows:
"GRIEVANCE AND ARBITRATION PROCEDURE
"Definition
"1. A grievance is defined to be any difference regarding wages, hours or working conditions between the parties hereto or between the Employer and an employee covered by this working agreement which might arise within any plant or within any region of operations.
"Grievance Procedure
"It is the sincere desire of both parties that employee grievances be settled as fairly and as quickly as possible. Therefore, when a grievance arises, the following procedure must be followed:
"2. For the purpose of adjusting employee grievances and disputes as defined above, it is agreed that any employee, individually, or accompanied by his committeeman, if desired shall:
* * * * *
"7. If such decision is not satisfactory, then, upon request of the President of any District Director of the Oil, Chemical and Atomic Workers International Union, AFL-CIO and within sixty (60) days from the posting date of the final appeal answer, there shall be set up a local Arbitration Board, and such griev-ances and disputes submitted to it within ten (10) days after formation of such Board. * * * These local Arbitration Boards shall consider only individual or local employee or local committee grievances arising under the application of the currently existing agreement, or supplements thereto, and local wage and classification disputes submitted on the initiative of the President or any District Director of the Oil, Chemical and Atomic Workers International Union * * *."

3. "Article V—Grievance Procedure
"(a) The parties agree that they will promptly attempt to adjust all complaints, disputes or grievances arising between them involving questions of interpretation or application of any clause or matter covered by this contract or any act or conduct or relation between the parties hereto, directly or indirectly.
* * * * *
"(b) * * * If no mutually satisfactory adjustment is reached by this means, or in any event within seven (7) days after the submission of the issue in writing as provided above, then either party shall have the right to refer the matter to arbitration as herein provided."

tion of any of the provisions of this labor contract; instead all disputes will be settled in the manner outlined in Section 10 —Grievances"), taken together with the broad introductory paragraph in the grievance procedure ("Should any difference arise as to the meaning and application of the provisions of this agreement * * * "), indicates an intention on the part of the contracting parties to allow either to bring an issue in dispute before the proper tribunal for resolution, and that since the first three steps of the grievance procedure are designed for employee-instituted complaints, it must of necessity have reference to the arbitration clause in step four. The reference in the "NO-SUE CLAUSE" to "neither party" can only have reference to the Union and the Company, and we find the conclusion inescapable that the phrase "any of the provisions of this labor contract" means just that.

█ We see no reason for the courts to strain the reading of collective bargaining agreements to rectify that of which a party should have been cognizant at the time of negotiation; neither are we inclined to read provisions so narrowly that a party will be deprived of rights he indicated every intention of retaining. Although perhaps literally correct, the Union's position that notwithstanding the agreement, disputes must be settled under the grievance procedure but that this method is only procedurally designed to accommodate employee grievances against the Company, thus the Company is precluded from its use, strikes us as hardly the intent of the parties at the time of the agreement. The question before us is not whether the Company could have bargained away its statutory right, under Section 301, to sue the Union for breaches of its contract,

without receiving or retaining a means of recourse against the other party, but whether it did so in this instance. We are of the opinion that in order to find such a relinquishment it should be explicit and beyond doubt.

█ It is difficult to see, as the Union contends, in view of the wording of the No-Sue Clause, how the No-Strike Clause [4] concerning disciplining of individual participants in an illegal strike became the *quid pro quo* for a damage claim against the Union, however, this is a matter involving the interpretation of a clause in the agreement. Justice Douglas observed in *Warrior & Gulf Nav. Co.*, supra, 363 U.S. page 578, 80 S.Ct. page 1351,

"The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate . * * * The collective agreement covers the whole employment relationship. It calls into being a new common law— the common law of a particular industry or of a particular plant. * * *

"A collective bargaining agreement is an effort to erect a system of industrial self-government. * * * Because of the compulsion to reach agreement and the breadth of the matters covered, as well as the need for a fairly concise and readable instrument, the product of negotiations (the written document) is, in the words of the late Dean Shulman, 'a compilation of diverse provisions: some provide objective criteria almost automatically applicable; some provide more or less specific standards which require reason and judgment in their application;

---

4. "The Union and its members agree:

"(a) That there shall be no strikes, work stoppages or slow downs during the life of this agreement or any extension thereof except as otherwise provided.

"(b) That any employee who is responsible for or who participates in a breach of this provision or any other provision of this Agreement may be subject to disciplinary action including discharge.

"(c) An employee subject to discharge or suspension for violation of this section shall be provided a hearing by the Works Manager, or his designated representative, in the presence of his shop steward and a member of the General Grievance Committee."

and some do little more than leave problems to future consideration with an expression of hope and good faith.'"

This makes it clear that interpretations of this sort are for the arbitrator rather than the courts.

The Union contends that Boeing Company v. International Union, United Auto., etc., 246 F.Supp. 860 (E.D.Pa.1965), wherein the Court ruled that the arbitration provisions of a collective bargaining agreement were foreclosed to the employer and thus inapplicable to the employer's claims for damages for an illegal work stoppage, is controlling in the present dispute. In that case, the union sought arbitration and the Court observed that in the entire history between the company and the union the company had not filed a grievance against the union and for it to thus order such action would have the effect of rewriting the agreement. This same reasoning is now put forth here, but we can see no reason, giving all due consideration to the "common law of a particular * * * plant," as enunciated in *Warrior & Gulf Nav. Co.*, supra, to conclude that because the occasion for the Company to have grieved has not occurred in the past, it follows that its first attempt shall fail when, as here, the right to grieve was sought to be retained.

Reliance by the Union upon two early Fourth Circuit decisions, International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., Inc., 168 F.2d 33 (1948) and United Electrical, etc., Workers of America v. Miller Metal Prod., Inc., 215 F.2d 221 (1954), is ill-founded in that, notwithstanding both involved questions of arbitration of damage claims under no-strike clauses, they were predicated upon the doctrine of *noscitur a sociis* applying to the grievance procedures arbitration clauses, which, in view of the subsequently adopted doctrine in *Warrior & Gulf Nav. Co.*, supra, places an unduly restrictive interpretation on the clauses as such, and which is no longer representative of national labor policy.

The present situation as to the contract's terms, the interpretation to be given them, and the required disposition, as the Company contends, is most closely akin to the case of Oneita Knitting Mills v. International Ladies' Garment Workers' Union et al., 249 F.Supp. 230 (D.C.S.C.1966), and the reasoning therein is controlling here. The Court there granted the union's request to suspend the company's suit for damages resulting from an alleged slow down and wildcat strike pending arbitration.

It is recognized that the arbitration clause in that contract,[5] being set out under a separate heading rather than like the instant clause contained in a continuous process, creates a clearly discernible distinguishing factor. On the other hand, the introductory grievance section language[6] is more restrictive than the similar provision with which we are dealing. Thus, giving what we believe is the only reasonable interpretation to the present No-Sue Clause, as well as the existing national labor policy, that doubtful questions are to be resolved in favor of arbitration, we conclude that the Company's claim for damages or whether they have foregone that right, under the No-Sue Clause, cannot, as a matter of law, be resolved on the basis of the pleadings and contract provisions so as to exclude the possibility of arbitration of the matter asserted.

Accordingly, the Union's motion to dismiss the complaint is denied.

---

5. "ARBITRATION
   "Section 12. Should there be any grievance or disagreement which cannot be settled between the Employer and the Union, the matter in question shall be submitted to the American Arbitration Association, which shall appoint an arbitrator whose decision shall be final and binding on both parties."

6. "GRIEVANCES
   "Section 11. Should any grievance or disagreement of any kind arise on the part of any employee covered by this agreement, there shall be no suspension of work on account of such grievance."

## APPENDIX

### SECTION 10—ADJUSTMENT OF GRIEVANCES:

Should any difference arise as to the meaning and application of the provisions of this agreement, the following procedure shall be observed and an earnest effort shall be made to settle such differences immediately in the following manner:

First Step—The employee and his shop steward shall discuss the grievance with the general foreman (or with the shift foreman if the general foreman is not available). If a written grievance is not presented to the Company within thirty (30) calendar days of the date of the occurrence causing the grievance it may not be presented later.

Second Step—Such written grievance shall be presented to the departmental superintendent by the area grievance committeeman, identified by number, and arrangements made for discussion of the case within five (5) calendar days with the aggrieved, general foreman or foremen, shop steward and committeeman. The superintendent's written disposition shall be made within three (3) days of the meeting and, if appealed to Third Step, a written notice of appeal must be presented to the Company within fifteen (15) calendar days of the date of his disposition.

Third Step—Such written notice of appeal shall be presented to the Director of Industrial Relations by the chairman of the grievance committee and arrangements made for a discussion of the case with the Grievance Committee and the International Union representative at the earliest convenience of the parties. A written disposition by the Director of Industrial Relations shall be made within seven (7) calendar days of the meeting and, if appealed to arbitration, written notice of appeal must be presented to the Company within thirty (30) calendar days of the date of his disposition.

Fourth Step—Such written notice of appeal shall be made to the Director of Industrial Relations by the International Union Staff Representative and, if within fifteen (15) calendar days the parties have not agreed on an arbitrator, the Federal Mediation and Conciliation Service shall be jointly petitioned (See Exhibit B) to submit a panel from which an arbitrator will be selected to hear the case. The decision of the arbitrator shall be final and binding and the costs of arbitration proceedings shall be equally borne by the parties.

In the absence of a written disposition by a Company representative within the prescribed time limit the grievance may be immediately appealed to the next step.

The Union shall not be considered as having agreed to the Company's position on a grievance as a result of not having referred it to a higher step.

The general grievance committee referred to in this agreement shall consist of not more than four (4) union members employed in the plant, including an alternate general grievance committeeman, who shall act in the place of any absent general grievance committeeman or one who has a personal grievance. These men so designated by the Union shall be afforded such time off, without pay, as may be reasonably required for the purposes hereinbefore set forth in this section. Any member of this committee shall have the right, on his own and without pay, to visit any department at reasonable times for the purpose of transacting the legitimate business of the grievance committee after notice to and permission from his foreman. The Company agrees to recognize the local union president as an ex officio member of the grievance committee.

It is mutually agreed that the Union shall be allowed a Shop Steward and alternate for each department on each shift.

Conferences called by the Company shall result in no loss of earnings by the employees involved.