H. K. PORTER COMPANY, INC., CONNORS STEEL DIVISION, WEST VIRGINIA WORKS, Appellee,

v.

LOCAL 37, UNITED STEELWORKERS OF AMERICA, AFL–CIO, and United Steelworkers of America, AFL–CIO, Appellants.

No. 11911.

United States Court of Appeals
Fourth Circuit.

Argued March 5, 1968.

Decided Sept. 5, 1968.

Michael H. Gottesman, Washington, D. C. (Bernard Kleiman, Pittsburgh, Pa., Elliot Bredhoff and George H. Cohen, Washington, D. C., James P. Clowes, Wheeling, W. Va., and Carney M. Layne, Huntington, W. Va., on brief), for appellants.

William C. Beatty, Huntington, W. Va. (Huddleston & Bolen, Huntington, W. Va., on brief), for appellee.

Before WINTER and BUTZNER, Circuit Judges, and MacKENZIE, District Judge.

BUTZNER, Circuit Judge:

Over the objection of the union, the district court ordered arbitration of the company's claim for damages alleged to have been caused by violation of a no-strike clause contained in the parties' collective bargaining agreement. The union contends arbitration is limited to employees' grievances. The company asserts it embraces its claim against the union. We conclude the district court correctly interpreted the agreement and affirm its decision. We also hold the district judge did not abuse his discretion in prohibiting the union from deposing the company's plant manager.

### I.

The collective bargaining agreement provided:

> "The Union and its members agree:
>
> "(a) That there shall be no strikes, work stoppages or slow downs during the life of this agreement or any extension thereof except as otherwise provided.
>
> "(b) That any employee who is responsible for or who participates in a breach of this provision or any other provision of this Agreement may be subject to disciplinary action including discharge.
>
> "(c) An employee subject to discharge or suspension for violation of this section shall be provided a hearing by the Works Manager, or his designated representative, in the presence of his shop steward and a member of the General Grievance Committee."

In 1966, while the agreement was in effect, employees, dissatisfied over company discipline of some of their number, struck the plant closing it for five days. The company promptly presented a grievance seeking damages and arbitration of its claim. Upon the union's denial of these demands, the company brought suit under Section 301 of the

Labor Management Relations Act [29 U.S.C. § 185] to compel arbitration.[1]

■ Under Section 301 of the Act, district courts, applying federal law fashioned from national labor policy, can order specific performance of an agreement to arbitrate. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). It is now well settled that an employer's claim for breach of a no-strike clause is a proper subject for arbitration. Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). Furthermore, in the case before us, the union, as well as its members, agreed to observe the prohibitions contained in the no-strike clause. It is therefore clear that the company's charge that the union violated the no-strike clause presented an arbitrable grievance if pertinent provisions of the collective bargaining agreement are broad enough to encompass arbitration of the company's claims against the union. We turn now to this inquiry.

■ The obligation to arbitrate must be found in the collective bargaining agreement. It is a matter of contract, and in the absence of agreement, a party cannot be required to submit a dispute to arbitration. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). But in construing the contract, doubts must be resolved in favor of arbitration. United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). "[T]he courts have been instructed that the parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." United Textile Workers of America v. Newberry Mills, Inc., 315 F.2d 217, 219 (4th Cir. 1963).

■ Here the collective bargaining agreement contains no clause excluding company claims against the union. On the contrary, the agreement indicates that the company and the union intended to settle their differences by arbitration. Section 12 of the agreement is called a "No-Sue Clause." It provides:

"It is understood and agreed that neither party will institute civil suits or legal proceedings against the other for alleged violation of any of the provisions of this labor contract; instead all disputes will be settled in the manner outlined in Section 10—Grievances."[2]

---

1. As an alternative to arbitration, the company sought a trial in the district court. In a thorough opinion that aided us in our disposition of this case, the district judge denied the union's motion to dismiss the complaint. H. K. Porter Co. v. Local 37, United Steelworkers, 264 F.Supp. 203 (S.D.W.Va.1967). Later he granted summary judgment for the company directing arbitration. For that reason he did not consider the merits of the case. We also deem it unnecessary to consider the merits. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Local 24, Elec. Workers v. Hearst Corp., 352 F.2d 957, 959 (4th Cir. 1965).

2. Section 10—Adjustment of Grievances—provides in part:

"Should any difference arise as to the meaning and application of the provisions of this agreement, the following procedure shall be observed and an earnest effort shall be made to settle such differences immediately in the following manner:

"First Step—The employee and his shop steward shall discuss the grievance with the general foreman (or with the shift foreman if the general foreman is not available). If a written grievance is not presented to the Company within thirty (30) calendar days of the date of the occurrence causing the grievance it may not be presented later.

"Second Step—Such written grievance shall be presented to the departmental superintendent by the area grievance committeeman, identified by number, and arrangements made for discussion of the case within five (5) calendar days with the aggrieved, general foreman or foreman, shop steward and committeeman. The superintendent's written disposition shall be made within three (3) calendar days of the meeting and, if appealed to Third Step, a written notice of appeal must be presented to

Appended to the agreement as "Exhibit B" is a "Memorandum of Understanding," which states:

"In the event any grievance arising between the Parties under the terms of this Agreement is appealed to Arbitration and the Parties fail to agree upon the Arbitrator, it is agreed that the parties will petition the Federal Mediation and Conciliation Service for the appointment of an Arbitrator to hear the case as provided for in Section 10—ADJUSTMENT OF GRIEVANCES"

The parties to which these paragraphs refer are the company and the union. Employees are not parties to the collective bargaining agreement. Thus it is apparent that arbitration is not confined to employees' grievances. The company and the union both recognized the possibility of disputes arising out of violation of the labor contract. They covenated not to sue, but agreed instead to settle their disputes by arbitration and, if necessary, to petition the Federal Mediation and Conciliation Service for the appointment of an arbitrator.

■ Controlling precedent is found in Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962), where the Court held an employer's action for damages for violation of a no-strike clause should be stayed pending arbitration. The parties had agreed to a grievance procedure that included arbitration of "all complaints, disputes or grievances arising between them involving questions of interpretation or application of any clause or matter covered by this contract, or act or conduct or relation between the parties hereto directly or indirectly." No other provision of the contract excluded from arbitration the breach of a no-strike clause. Here as in *Drake*, broad provisions for the arbitration of any grievance arising between the parties, unrestricted by an exclusionary clause, are sufficient to impose upon the parties the duty to arbitrate the company's claim for strike damages.

The principal case upon which the union relies, Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), was decided the same day as *Drake*. The collective bargaining agreement considered there was not susceptible to a construction requiring arbitration of a claim for damages against a union for breach of a no-strike clause. The Court found a "critical limitation:"[3] the arbitrator could consider only employees' grievances. Furthermore, the agreement expressly provided that arbitration could be invoked only at the option of the union. These provisions, not found in the agreement before us, distinguish *Atkinson*. Nor is Boeing Co. v. International Union, United Auto Workers, 370 F.2d 969, 970 (3d Cir. 1967), applicable. There in provisions for grievance procedure, which the court observed were employee

the Company within fifteen (15) calendar days of the date of his disposition.

"Third Step—Such written notice of appeal shall be presented to the Director of Industrial Relations by the chairman of the grievance committee and arrangements made for a discussion of the case with the Grievance Committee and the International Union representative at the earliest convenience of the parties. A written disposition by the Director of Industrial Relations shall be made within seven (7) calendar days of the meeting and, if appealed to arbitration, written notice of appeal must be presented to the Company within thirty (30) calendar days of the date of his disposition.

"Fourth Step—Such written notice of appeal shall be made to the Director of Industrial Relations by the International Union Staff Representative and, if within fifteen (15) calendar days the parties have not agreed on an arbitrator, the Federal Mediation and Conciliation Service shall be jointly petitioned (See Exhibit B) to submit a panel from which an arbitrator will be selected to hear the case. The decision of the arbitrator shall be final and binding and the costs of arbitration proceedings shall be equally borne by the parties."

3. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 243, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

oriented, an arbitrable grievance was defined as a difference between the company and any employee.

The union argues that the no-sue clause merely provides that disputes are to be arbitrated in the manner provided for the adjustment of grievances (section 10, quoted in the margin, n. 4); and because this section does not outline a manner for settling employer grievances, the no-sue clause creates no independent right to arbitrate. Continuing, the union asserts that the disciplinary sanction against employees contained in the no-strike clause is the sole remedy available to the company. In sum, it is the union's position that when the company breaches the agreement, the employees, through their agent, the union, have a grievance procedure; while on the other hand, when the company is aggrieved its sole remedy is to discipline its employees.

 The union's argument can find no place in the interpretation of a collective bargaining agreement. The canons of construction require the courts not to deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and caution "[i]n the absence of any express provision excluding a particular grievance from arbitration * * * only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail * * *." United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 584, 80 S.Ct. 1347, 1353, 1354, 4 L.Ed.2d 1409 (1960).

The procedural devices of section 10 do not explicitly exclude arbitration of company grievances against the union. Exclusion by implication, and the consequent nullification of those provisions which indicate the parties' intention to arbitrate, is contrary to our national labor policy.[4] Furthermore, as the district judge pointed out, although the first three steps of the grievance procedure found in section 10 were inapplicable, step four provided an appropriate means for initiating arbitration.[5] The district judge properly recognized that a collective bargaining agreement "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsman cannot wholly anticipate." United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960).

 Although the dispute between the parties over the company's claim for strike damages raise factual issues, no genuine issue as to any material fact was presented touching upon the question of the propriety of arbitration. Summary judgment was proper.

## II.

 The union sought to depose the plant manager to gain information about the company's claim that the union breached the collective bargaining agreement. The district judge, having determined that arbitration was appropriate, properly refrained from examining the merits of the case. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d

---

4. Section 203(d) of the Labor Management Relations Act [29 U.S.C. § 173(d)] provides in part:

 "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement."

 See United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

5. H. K. Porter Co. v. Local 37, United Steelworkers, 264 F.Supp. 203, 206 (S.D.

W.Va.1967). Accord, Oneita Knitting Mills v. ILGWU, 249 F.Supp. 230 (D.S.C.1966); Local No. 463, United Papermakers & Paperworkers v. Federal Paper Board Co., 239 F.Supp. 45 (D.Conn.1965).

Examination of procedure may be pertinent in determining whether the parties contracted to arbitrate, but after a court has held arbitration proper, resolution of procedural questions rests with the arbitrator. Wiley & Sons v. Livingston, 376 U.S. 543, 555, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

1403 (1960); Winston-Salem Printing Pressmen & Assistants' Union v. Piedmont Publishing Co., 393 F.2d 221, 228 (4th Cir. 1968); Local 24, Elec. Workers v. Hearst Corp., 352 F.2d 957, 959 (4th Cir. 1965). Consequently, his order quashing the notice to depose the manager for inquiry on the merits of the controversy was not an abuse of discretion. Lummus Co. v. Commonwealth Oil Refining Co., 273 F.2d 613 (1st Cir. 1959); Pennsylvania Greyhound Lines, Inc. v. Amalgamated Ass'n of St., Elec., & Motor Coach Employees, 98 F.Supp. 789 (W.D.Pa.1951), rev'd on other grounds, 193 F.2d 327 (3d Cir. 1952). See 4 Moore's Federal Practice ¶ 26.14 (2d ed., 1967).

Affirmed.