TRANSCARIBBEAN MOTORS
TRANSPORT, INC., Plaintiff,
v.
UNION DE TRONQUISTAS DE P.R.,
LOCAL 901 Affiliated to International
Brotherhood of Teamsters, Chauffeurs,
Warehousemen & Helpers of America,
Defendants.

Civ. No. 80–1925CC.

United States District Court,
D. Puerto Rico.

Dec. 27, 1982.

Rafael Cuevas Kuinlam, Hato Rey, P.R., for plaintiff.

Pedro J. Varela, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

On October 16, 1980 this Court issued a preliminary injunction against the defendant Union, its officers, agents, employees' representatives, members and all persons in active concert or participation with them enjoining them from striking or otherwise obstructing plaintiff's operations of cargo transport and delivery. It was the Court's opinion that the arbitration clause of the collective bargaining agreement compelled the Union to arbitrate its claim that the company should negotiate the closing of a certain warehouse. The Court of Appeals, 657 F.2d 260 (1st Cir.1981), reversed this opinion and set aside the preliminary injunction. It held that the Union's claim against the employer was not one of those specifically enumerated in section 10 of Article XIII of the agreement for which arbitration was compulsory, that it was a "complaint regarding the interpretation of the agreement" covered by sections 1 through 6 of the same article and that, given the existence of a compulsory arbitration

clause, sections 5 and 6, providing for submission of this type of claims to an arbiter, must be construed as voluntary.

■ On January 18, 1982 defendant moved this Court for dismissal of the action or a stay of the proceedings claiming that the matters pending before the Court—whether the Union violated the "no-strike" clause contained in the collective bargaining agreement and whether said strike caused any damages to plaintiff—are covered by the compulsory grievance procedure outlined in sections 1 through 6 of Article XIII of the agreement and the same have been voluntarily submitted by plaintiff to arbitration. Plaintiff opposed defendant's motion contending that it is not required to exhaust the grievance and arbitration procedures of the collective bargaining agreement since the mandatory arbitration clause contained therein is not broad enough to cover its claim. Additionally, it alleges that although the Court of Appeals ruled that the defendants' strike was not in violation of the mandatory arbitration clause of the agreement, it did not pass upon the illegality of said strike under the "no-strike, no-lockout" clause of the same.[1] It further argues that where a collective bargaining agreement contains an express "no strike" promise by the Union the same does not have to be coterminous with an arbitration clause, and that a hearing should be held in this case to determine the parties' true intentions in negotiating a "no-strike, no-lockout" clause.

■ It has been held that where an arbitration clause is broad enough to encompass the employer's complaint that the union has violated the no-strike clause of the collective bargaining agreement, the employer is required to arbitrate before pursuing its remedies under Section 301(a) of the Taft-Hartley Act, 29 U.S.C.A. Section 185(a). See: *Drake Bakeries, Inc. v. Local 50,*

*American Bakery & Confectionery Workers Intnl.,* 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). An action for damages arising from an arbitrable dispute must be stayed pending arbitration of said dispute. *Id.* In certain cases the action must be dismissed without prejudice where there is no problem of a statute of limitation and the issues presented to the arbitrator could obviate the need for future litigation. See: *General Dynamics Corp. v. Industrial Union of Marine and Shipbuilding Workers of America,* 469 F.2d 848, 854 (1st Cir.1972) cited in *Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters,* 659 F.2d 1252, 1259 (4th Cir.1981). On the other hand, where a particular dispute is not covered by the arbitration clause of the agreement, an aggrieved party may file an action for damages under Section 301(a) of the Taft-Hartley Act and the action may not be stayed or dismissed pending arbitration of some related grievance, where the arbitrator's award will not determine any issues in the damage suit. See: *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241–245, 82 S.Ct. 1318, 1320–22, 8 L.Ed.2d 1581 (1962).

Plaintiff's contention is that it is not required to arbitrate its claim that the strike was in violation of the no-strike provision of the collective bargaining agreement since the mandatory arbitration clause of the agreement covers only employees' grievances and does not cover the company's claim for damages due to an illegal strike. Defendant alleges that although this is so, the steps outlined in sections 1 through 6 of Article XIII are mandatory and that the issue has been submitted to an arbitrator pursuant to section 6 of said article.

■ Plaintiff's grievance that the strike violated the no-strike clause of the collective bargaining agreement is not subject to mandatory arbitration since it does not concern any "disciplinary action, dis-

---

1. The Court of Appeals set aside the preliminary injunction on the ground that the dispute originating the strike was not arbitrable. We note here that the injunction could not issue even if the Court found that the issue of whether the strike violated the no-strike clause of the

agreement was arbitrable. See: *Buffalo Forge Co. v. United Steelworkers of America,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976); *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass.,* —— U.S. —— , 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982).

putes as to seniority rights ... (or) the existence or nonexistence of rules and procedures which if changed affect time and wages or working conditions." Article XIII, Section 10, of the Collective Bargaining Agreement. On February 5, 1982 the parties submitted the following issues to Arbitrator Benito Aponte of the Bureau of Conciliation and Arbitration of the Puerto Rico Labor Department for his consideration: (1) To determine whether the language of Article XVI, Sections 7, 8, 9 and 10 and Article XXIII[2] of the existing Collective Bargaining Agreement satisfy the obligation of the company to negotiate the effects of a partial closing on the working conditions of the employees, thus excusing the company from negotiating the effects of the closing of the particular warehouse and, in the event that the company did not comply with its obligation, that the arbitrator shall establish the adequate remedy (Union's submission rephrased); and (2) Whether the company was obligated to bargain on September 1980 the effects of this shutdown on the working conditions of the warehouse employees and, assuming it had the obligation, whether the company refused to negotiate and the damages suffered, if any, by the warehouse employees due to the company's failure to undertake this obligation (plaintiff's submission rephrased). A reading of these submissions shows that only the grievances of the Union and the warehouse employees regarding plaintiff's refusal to negotiate the effects of a partial shutdown are to be considered by the arbitrator. Plaintiff's claims that the Union violated the "no-strike" clause of the collective bargaining agreement and the damages caused by said violation were not submitted to arbitration. A previous unilateral submission encompassing "each and every one of the controversies between the company and the Union, which appear from the Opinion and Order of October 15, 1980" cannot be considered as that required by section 6, Article XIII of the agreement which expressly provides for a consensual procedure. See Court of Appeals' opinion issued in this case, 657 F.2d 260.

Having concluded that plaintiff's claims are not subject to mandatory arbitration and that the same have not been submitted to arbitration pursuant to the alternative, non-compulsory arbitration clause, dismissal of this action would be proper only if plaintiff lacked a cause of action on the merits. Since "[t]he propriety of an award of monetary damages resulting from a work stoppage ... depends on the determination whether the union is under a contractual duty not to strike," *United States Steel Corp. v. United Mine Workers,* 548 F.2d 67, 72 (3rd Cir.1976), cert. den. 431 U.S. 968, 97 S.Ct. 2926, 53 L.Ed.2d 1063 (1977), dismissal of this action would be proper if, upon deciding that the union was not required to arbitrate its claim that plaintiff must negotiate the effects of a partial closing, the Court of Appeals implicitly decided that the strike did not violate the collective bargaining agreement.

■ Plaintiff alleges that the principle of coterminous application of arbitration and no-strike clauses of a collective bargaining agreement should not be applied to agreements containing an express no-strike clause. The principle of coterminous application of an arbitration clause and a duty not to strike prescribes that a union may not engage in a strike over disputes which the parties have agreed to submit to final and binding arbitration, although the agreement does not expressly prohibit such a strike since this no-strike obligation is generally the "quid pro quo" for an undertaking by the employer to submit grievance disputes to the process of arbitration" *Boys Markets, Inc. v. Retail Clerk's Union,* 398 U.S. 235, 248, 90 S.Ct. 1583, 1591, 26 L.Ed.2d 199. See: *Gateway Coal Co. v. United Mine Workers of America,* 414 U.S. 368, 380–384, 94 S.Ct. 629, 638–40, 38 L.Ed.2d 583 (1974); *Teamsters Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). The duty not to strike

---

**2.** Article XVI of the Collective Bargaining Agreement covers employees' seniority rights. The sections cited deal with the effects of re- duction and/or increase of personnel. Article XXIII covers compensation for removal without cause.

and the arbitration clause are thus referred to as having a "coterminous application." This duty not to strike is not to be inferred, however, "beyond the area which it has been agreed will be exclusively covered by compulsory arbitration." *Lucas Flour*, 369 U.S. at 106, 82 S.Ct. at 578. For this reason and applying this principle some courts have held that an implied no-strike obligation is not violated by a sympathy strike. See: *United States Steel Corp. v. United Mine Workers*, 548 F.2d at 72–74.

A different situation arises where the parties have expressly agreed on a no-strike clause as well as to arbitrate their differences. In *Gateway Coal*, the Supreme Court stated 414 U.S. at page 382, 94 S.Ct. at page 639;

> [A]n arbitration agreement is usually linked with a concurrent no-strike obligation, but the two issues remain analytically distinct. Ultimately, each depends on the intent of the contracting parties. It would be unusual, but certainly permissible for the parties to agree to a broad mandatory arbitration provision yet expressly negate any implied no-strike obligation. . . . Absent an explicit expression of such an intention, however, the agreement to arbitrate and the duty not to strike should be construed as having a coterminous application.

Some Circuits have held that this principle, which has been regarded as a rule of contract interpretation, does not apply to collective bargaining agreements with an express no-strike clause where the language of the agreement or other evidence reveal the parties' intention that each clause be separately applied. *Pacemaker Yacht Co. v. N.L.R.B.*, 663 F.2d 455, 457–460 (3rd Cir. 1981); *W–I Canteen Service, Inc. v. N.L.R.B.*, 606 F.2d 738, 743–744 (7th Cir.1979); *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters*, 597 F.2d 1138, 1144–1145 (8th Cir.1979), cert. den. 444 U.S. 840, 100 S.Ct.

79, 62 L.Ed.2d 52. In *Delaware Coca-Cola Bottling Co. v. Gen. Teamster Local Union*, 624 F.2d 1182 (3rd Cir.1980), the Third Circuit Court of Appeals applied the principle in a case of an express no-strike clause and held that the no-strike clause of the collective agreement in question did not apply to sympathy strikes which were not arbitrable under the contract. *Id.*, at pp. 1185–1187. Nevertheless, this decision was reached after a trial on the merits and the Court's application of the principle was based on the absence of other evidence tending to demonstrate the contrary.[3] The First Circuit applied this principle to an express no-strike clause situation in *N.L.R.B. v. C.K. Smith & Co., Inc.*, 569 F.2d 162 (1st Cir.1977), cert. den. 436 U.S. 957 (1978). In that case the Court of Appeals held that a sympathy strike did not violate the no-strike clause of the agreement where the strike was not over an arbitrable matter and the strike itself was not arbitrable. It should be noted that the no-strike clause was contained within the provisions of the contract entitled "Grievance Procedure" which may have been the basis for applying the rule.

■ In the present case plaintiff contends it should be permitted to present extrinsic evidence before the Court determines whether or not the parties intended to apply the clauses coterminously. At no moment has plaintiff informed the Court what specifically was its intention when it negotiated these clauses with the Union. It has referred in general terms to a distinct "quid pro quo." A reading of the no-strike clause in this case, however, shows that this is not a broad, general clause; that the Union's promise not to strike was very narrowly drawn and of limited scope.[4] Under the terms of the present no-strike clause, the Union bound itself not to strike insofar as it would solve its complaints pursuant to the provisions of the agreement. Clearly, if

---

**3.** See *Pacemaker Yacht Co.*, 663 F.2d 457–460 where the Third Circuit later explains its ruling in *Delaware Coca-Cola Bottling Co.* and distinguishes the facts.

**4.** Article XIV, Section 1 of the collective bargaining agreement provides: "Waiver to Strikes. The Union obliges itself *to solve complaints pursuant to provisions of the agreement* herein and *in those terms* makes a waiver as to strikes." (Emphasis ours.)

the Union's grievance fell outside the scope of the compulsory provisions of the agreement for resolution of disputes so that it could not be required to utilize those proceedings to solve its complaint, it could not be required to abide by the other part of its promise. Therefore, a reading of the no-strike clause in this case clearly establishes that the Union's promise not to strike is coterminous with its duty to arbitrate. We have reached this conclusion after a careful consideration of all the provisions of the collective bargaining agreement. We can see no need to hold a trial or even a hearing to determine what plaintiff may have given in exchange for this no-strike promise;[5] whatever that may have been it cannot have the effect of broadening the scope of said promise.

For these reasons, it is ORDERED that the remaining claims of the complaint be dismissed for failure to state a cause of action.

SO ORDERED.

---

**5.** It appears that this may have been the no-lockout promise contained in section 2 of Article XIV of the collective bargaining agreement, entitled "Waiver to Strikes and Lockouts."