KANSAS GAS & ELECTRIC COMPANY, Plaintiff–Appellee,

v.

WESTINGHOUSE ELECTRIC CORPORATION; Chevron, U.S.A., Inc., Defendants–Appellants.

No. 88–2012.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1988.

Decided Nov. 22, 1988.

---

James Norton Roethe (David W. Trotter, Pillsbury, Madison & Sutro, San Francisco, Cal., James C. Roberts, Bradfute W. Davenport, Jr., George A. Somerville, Mays & Valentine, Richmond, Va., on brief), for defendants-appellants.

Virginia W. Powell (Laura H. Hamilton, Hunton & Williams, Richmond, Va., Warren B. Wood, Wolf Creek Nuclear Operating Corp., Burlington, Kan., on brief), for plaintiff-appellee.

Before RUSSELL, PHILLIPS, and CHAPMAN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Appellants appeal the district court's denial of their motion to compel arbitration. Because we conclude that their contract dispute with appellees is not arbitrable, we affirm.

## I

In February 1980 appellees Kansas Gas and Electric Company and Kansas City Power and Light Company entered into a settlement agreement with the Westinghouse Electric Corporation. As part of the agreement, appellees undertook to purchase from Westinghouse 1.7 million pounds of uranium for delivery during 1985–89. In 1981, Westinghouse entered into a separate agreement with Gulf Oil, as part of which Gulf agreed to accept Westinghouse's responsibilities under the uranium contract with appellees. In 1985, Gulf was merged into Chevron, and Chevron has now taken on Gulf's responsibilities here. Appellees have assigned partial interest in the agreement to appellee Kansas Electric Power Cooperative, Inc., and have delegated certain responsibilities for administration of the agreement to Wolf Creek Nuclear Operating Corporation.

Chevron's delivery of uranium to appellees (hereinafter KG & E) is priced at a "market price" (less a certain percentage or dollar amount per pound, which is not in dispute). The contract defines "market price," the key issue being litigated, as: "the Exchange Value published the month immediately prior to the month of Delivery ... by the Nuclear Exchange Corporation ("Nuexco") ... in its *Monthly Report to the Nuclear Industry.*" Joint Appendix at 60. The contract also provides that

> If the Market Price per pound ... is not published for two (2) consecutive months, a replacement method shall be agreed to by [KG & E and Chevron]. If [they] cannot mutually agree upon a replacement method within an additional two (2) months, the replacement method will be established through the process of arbitration [in accordance with provisions not relevant here].

Joint Appendix at 61.

In 1986, ruling in a lawsuit brought against the United States Department of Energy (DOE) by a group of United States uranium producers, a federal district court held that DOE must restrict its enrichment of nuclear materials by non-United States sources. *Western Nuclear, Inc. v. Huffman,* No. 84–C–2315 (D.Colo.1986), *affirmed* 825 F.2d 1430 (10th Cir.1987). KG & E subsequently requested that Chevron deliver only uranium of domestic origin, but contends it did not condition that deliv-

ery on any agreement to pay a higher price.

The district court order had an impact on the market for domestic uranium. In December 1986, Nuexco began to note in its Monthly Report a premium that, when added to the Exchange Value, reflected the price at which uranium might be purchased when the uranium was of United States origin. In March 1987, Chevron notified KG & E that it intended to compute the price for domestic uranium by treating the contract Market Price as the Nuexco Exchange Value *plus* the premium. KG & E rejected this valuation and insisted that the contract price must be based on the Nuexco Exchange Value alone. Representatives from the two parties met to discuss this dispute, but no agreement was reached.

In August 1987, KG & E received from Chevron a demand for arbitration of the issue. Chevron claimed that Nuexco was no longer publishing the market price. In response, KG & E filed a motion in district court to compel Chevron to comply with the contract. KG & E argued that because the contract defined Market Price as the Nuexco Exchange Value, the arbitration clause had not been triggered. Chevron in turn moved under § 4 of the Federal Arbitration Act, 9 U.S.C. § 4, to compel arbitration. The parties agreed that the arbitrability issue would be heard first by the district court and that briefing and argument on KG & E's motion would be deferred. The district court ruled that because Nuexco had continued to publish an Exchange Value, and the definition of this term had not changed, the condition precedent to arbitration had not occurred. Chevron's motion to compel arbitration was denied. This appeal followed.

## II

■ The first issue is whether the district court order denying Chevron's motion is appealable either as a final decision or as an appealable interlocutory order. We hold that the order was an appealable interlocutory order under 28 U.S.C. § 1292(a)(1).

In the past we have recognized jurisdiction under 28 U.S.C. § 1292(a)(1) "over interlocutory appeals from denials of motions to compel arbitration...." *B & R Associates v. Dependable Ins. Co.*, 835 F.2d 526, 528 (4th Cir.1987) (citing cases). In *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, ⸺ U.S. ⸺, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), the Supreme Court overturned the *Enelow–Ettleson* doctrine, on which these prior decisions relied, that certain interlocutory appeals were automatically appealable under § 1292(a)(1). The Court noted, however, that this holding would not prevent interlocutory review where "truly needed": "Section 1292(a)(1) will, of course, continue to provide appellate jurisdiction over orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have ' "serious, perhaps irreparable, consequences." ' " *Gulfstream Aerospace*, 108 S.Ct. at 1142–43 (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981), which quotes in turn *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955)).

We hold that orders denying arbitration do have an injunctive effect and have "serious, perhaps irreparable, consequence." The order is injunctive because it enjoins proceedings in another tribunal. It has serious consequences because of the "irreparable harm that exists when arbitration is denied *ab initio....*" *Taylor v. Nelson*, 788 F.2d 220, 224 (4th Cir.1986). If a party "must undergo the expense and delay of trial before being able to appeal, the advantages of arbitration—speed and economy— are lost forever." *Alascom, Inc. v. ITT North Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir.1984).

## III

■ As to the merits of the case, determination of the arbitrability of a dispute is subject to de novo review. *Alascom*, 727 F.2d at 1422. *See also Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 251 (4th Cir.1987); *B & R Associates*, 835 F.2d at 527–28.

We begin with the strong federal presumption favoring arbitrability. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). We have said that we will compel arbitration " 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Pilot Freight Carriers, Inc. v. Int'l Bhd. of Teamsters*, 659 F.2d 1252, 1256 (4th Cir. 1981) (quoting *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Courts must inquire whether a contract's arbitration provisions "arguably cover" the dispute at issue; they must allow arbitration unless these provisions "cannot reasonably be construed to cover" the dispute. *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 522 (2d Cir.1980).

As these authorities indicate, there are limits to the presumption of arbitrability. The Supreme Court has recently reiterated that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.' " *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citing *Warrior and Gulf*, 363 U.S. at 582, 80 S.Ct. at 1353). The *AT & T* Court also emphasized that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." 475 U.S. at 649, 106 S.Ct. at 1418.

If the role of the courts is to mean anything of significance, and if the requirement that a party should not have to arbitrate what it has not agreed to is to have any substance, the question of arbitrability here was one for the district court, and was one which that court decided correctly.

The contract issue is the definition of market price. The contract defines market price as follows:

[T]he market price per pound of U308 [i.e. uranium] ... ("Market Price") shall be defined as the Exchange Value published the month immediately prior to the month of Delivery of the U308 to Owner by the Nuclear Exchange Corporation ("Nuexco") ... in its *Monthly Report to the Nuclear Industry*.

Joint Appendix at 60. Chevron wants to compute the market price based on the Exchange Value *plus* the premium which, when added to the Exchange Value, reflects the price of uranium of United States origin. It contends that the Exchange Value published now is fundamentally different than the one published at the time of the original contract and that the pricing provisions of the contract should be modified through arbitration. Even if it were true, *arguendo*, that the Exchange Value had changed, this is not an event that triggers arbitration under the contract. The contract plainly provides that arbitration is appropriate only if the Exchange Value is not published for two consecutive months, an event which has not occurred.

Chevron nevertheless contends that the Exchange Value is no longer the Exchange Value and so is in effect no longer being published. It claims that the Exchange Value's definition has changed and that it no longer serves as a surrogate for actual market price. Examination of the extrinsic evidence Chevron supplies might establish some merit to the contention that the Exchange Value no longer serves as *surrogate* market price. The fact remains, however, that the bargain struck defined Market Price by the Exchange Value. Chevron should not be allowed to impose on this bargain a broader arbitration clause than the one the parties actually reached. The district court correctly found Chevron's argument "creative but not convincing."

Because we may say " 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,' " *Pilot Freight Carriers*, 659 F.2d at 1256 (citation omitted), the district court ruling denying Chev-

ron's motion to compel arbitration is affirmed.

AFFIRMED.*

---

* We only hold that the meaning of the disputed contract terms is not an arbitrable issue under the arbitration provision of the parties' contract. We express no opinion on the proper interpretation of the disputed terms in light of the extrinsic development that spawned the dispute, or on whether that development should affect the interpretation in any way. Assuming that KG & E's motion to enforce compliance with the contract is still pending in the district court, those questions remain for determination there.