892 F.2d 74
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Lisa G. GODWIN, individually; O.W. Godwin, Jr.; Terry W.
Godwin; Marsha Godwin Bass, individually and as
Trustees of the Oliver W. Godwin, Jr.
Trust, Plaintiffs-Appellees,
v.
Gregg F. GALLAGHER; Drexel Burnham Lambert, Inc.,
Defendants-Appellants.
 No. 89-1703.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 3, 1989.
Decided: Dec. 11, 1989.
 
 Jonathan D. Sasser (Moore & Van Allen, on brief), for appellants.
 David Driefus (Donna Sisson Richter, Poyner & Spruill, on brief), for appellees.
 Before HARRISON L. WINTER and SPROUSE, Circuit Judges, and JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 The controversy underlying this appeal concerns a securities fraud action by the Oliver W. Godwin, Jr. Living Trust against Drexel Burnham Lambert, Inc. and Drexel account executive Gregg F. Gallagher.[1] Drexel appeals an order of the district court refusing to compel arbitration of the dispute. We affirm.
 
 
 2
 * Oliver W. (Bill) Godwin, Jr. established the Trust in 1985 after the sale of the family business, a building supply company. He named himself and his children, Terry W. Godwin, Marsha Godwin Bass, and Lisa G. Godwin, as beneficiaries and designated himself, Terry, and Marsha as trustees. Between August 1987 and January 1988, the value of the Trust declined precipitously, from approximately $2,000,000 to $200,000. The Godwin family contends that Drexel churned the Trust account, engaged in unauthorized, high-risk margin trading, and concealed transaction details.[2] Through this action, the family seeks compensatory and punitive damages and attorneys' fees, claiming violations of the Securities Act of 1933 and the Securities Exchange Act of 1934, negligent failure to supervise, breach of fiduciary duty, and constructive and actual fraud. The suit was brought by Bill, Terry, and Marsha, individually and as trustees, and by Lisa individually.
 
 
 3
 Immediately after the complaint was filed, Drexel moved to stay proceedings and compel arbitration pursuant to the Federal Arbitration Act[3] and Rule 12 of the Federal Rules of Civil Procedure. In support of this motion, Drexel submitted two copies of a customer account agreement signed by Terry and Marsha in December 1987, which required arbitration to resolve any dispute arising from the agreement. The form agreement was titled "Customer's Agreement: Individual Accounts" and was drafted in language directed to future relationships between an individual and Drexel. The document did not include language identifying it as a trust agreement, but did include the Trust account number. Drexel also submitted a trade acknowledgment allegedly sent to Bill Godwin.
 
 
 4
 The plaintiffs submitted the affidavits of Bill, Terry, and Marsha asserting that Bill was the only trustee who ever dealt with Gallagher. Bill averred that during the winter of 1987 he and Gallagher conducted several conversations concerning a variety of estate planning matters, including the creation of accounts for his eight grandchildren, but Gallagher never informed him of the massive losses the Trust sustained during this period. He asserted that Gallagher sent him a variety of documents in mid-to-late 1987, saying they required signatures to implement the estate transactions. Bill did not remember whether the papers signed by Terry and Marsha were relayed through him or sent directly to them by Gallagher. However, he averred that he was told without further explanation to execute the documents and that he so advised them. He emphasized that his attention was never directed to the fact that the instruments related to the Trust, and that he never signed an arbitration agreement pertaining to the Trust. He stated that he always acted as the sole representative of the Trust with the express knowledge and consent of Terry and Marsha. In their affidavits, Terry and Marsha substantiated the information averred to by their father and indicated their belief that they signed the Drexel customer agreement solely as individuals. They also averred that they knew nothing of the substantial trading losses incurred by the Trust account at the time the customer agreements were executed.
 
 
 5
 The district court held that the agreements were not binding on the Trust because Terry and Marsha had not signed them in their capacities as trustees. Therefore, the court denied Drexel's motion to compel arbitration by the Trust, by the trustees, or by Lisa individually. It granted a motion to compel arbitration as to Terry and Marsha individually; they subsequently voluntarily dismissed their individual claims. Pursuant to 9 U.S.C. § 15, Drexel appeals the court's refusal to compel arbitration as to the Trust.
 
 II
 
 6
 Drexel contends that Terry and Marsha bound the Trust to arbitrate because the circumstances under which they signed the customer agreements indicate they signed as trustees. The appellant cites two North Carolina cases in support of this proposition, Tocci v. Nowfall, 220 N.C. 550, 18 S.E.2d 225 (1942), and Jerome v. Great Am. Ins. Co., 52 N.C.App. 573, 279 S.E.2d 42 (1981). Drexel is correct in asserting that we must look to state contract law to determine whether the customer agreements bound the Trust, because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960), quoted in AT & T Technologies v. CWA, 475 U.S. 643, 648 (1986). Furthermore, "determination of the arbitrability of a dispute is subject to de novo review." Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp., 861 F.2d 420, 422 (4th Cir.1988). However, we find that the cases cited by Drexel, rather than compelling the conclusion that Marsha and Terry intended to bind the Trust, require the contrary conclusion when applied to the circumstances of this case.
 
 
 7
 Tocci involved an action to quiet title on property which had been conveyed to a realty company as trustee. The realtor subsequently sold the same lot to two separate buyers, using the word "trustee" on one deed but not on the other. The Supreme Court of North Carolina held that the absence of the word "trustee" on the first deed was not determinative:
 
 
 8
 [T]he point at issue is whether the conveyance under review was actually made in execution of the power where nothing on its face indicated the existence of such power. The determination of that question has been referred to the intent of the grantor ... and it is uniformly held that such intent may be inferred from the circumstances surrounding the transaction....
 
 
 9
 18 S.E.2d at 228 (citations omitted). This reasoning was cited in Jerome, where the Court of Appeals of North Carolina reviewed a judgment in favor of an owner and mortgagee in a suit on a fire insurance policy. Among other grounds, the insurance company defended on the basis that the owner's wife, a trustee on a deed of trust, had executed a second deed of trust as an individual and not in her capacity as trustee. The court stated:
 
 
 10
 A deed executed by the trustee to convey property held in trust will operate as an exercise of the trustee's power of disposition notwithstanding the failure on its face to indicate that it was executed by the trustee in his capacity as such when the intent to exercise the power can be inferred from the circumstances surrounding the transaction.
 
 
 11
 279 S.E.2d at 46. The principle emanating from Tocci and Jerome is that the surrounding circumstances are critical in cases involving a signature without a trustee designation. Such a document will be interpreted as signed by an individual in his or her capacity as trustee if it can be inferred from the circumstances that such was the intent.
 
 
 12
 Here, Drexel asserts the key circumstances are the presence of the Trust account number on the form agreement and the fact that Terry and Marsha had no other accounts with Drexel. However, the documents were entitled "Customer's Agreement: Individual Accounts" and bore only the names "Marsh Godwin Bass" and "Terry Watson Godwin." Except for the bald account number, the agreements were devoid of any indicia that they related to the Trust. Considering the form of the agreements and the information provided in the affidavits of the parties, the circumstances demonstrate that Drexel did not convey to the signing parties its intention that they execute the agreement as trustees, and that the parties' understanding was that they were acting only as individuals.[4] We conclude, therefore, that the Trust was not contractually bound to arbitrate this dispute.[5]
 
 
 13
 The order of the district court refusing to compel arbitration is
 
 
 14
 AFFIRMED.
 
 HARRISON L. WINTER, Circuit Judge, dissenting:
 
 15
 The principal question presented by this appeal is a close one, but I would conclude that Terry and Marsha Godwin signed the customer account agreement containing the requirement for arbitration as trustees and not as individuals.
 
 
 16
 The majority correctly states the North Carolina rule that the capacity in which they signed is to be inferred from the circumstances surrounding the signing. The significant and controlling fact with regard to the signing is that Terry and Marsha had no capacity or relationship with Drexel Burnham Lambert, Inc., except as trustees of the Oliver Godwin, Jr. Living Trust. They therefore must have signed as trustees.[1] The fact that they were beneficiaries of the trust and that other accounts to benefit their children might be established is, to my mind, unpersuasive. Reasonable people would not think that such tenuous and insubstantial connections with a broker would provide any basis on which to ask them to sign a customer's agreement.
 
 
 17
 Absent a basis on which to avoid the customer's agreement--an issue on which I presently express no view--I would enforce the arbitration provision of the agreement. Thus I would reverse the judgment of the district court and remand the case for further proceedings.
 
 
 18
 From a contrary disposition, I respectfully dissent.
 
 
 
 [1]
 In this opinion, the appellants (defendants below) shall be referred to as Drexel, and the appellees (plaintiffs below) as the Trust
 
 
 [2]
 Specifically, the complaint states the following: Bill Godwin met Gallagher in early 1985 when Godwin's business pension fund purchased stock through Drexel. Prior to the events leading to this dispute, that was the only experience Godwin had in purchasing securities. Gallagher subsequently traveled to North Carolina on several occasions to solicit further business from Godwin. When Godwin sold his business, he told Gallagher that he would invest the money on behalf of himself and his children and that his highest priorities were safety of the principal and regular income. Gallagher advised him that the safest investment would be AAA/AAA tax-exempt municipal bonds. Based on Gallagher's representations, Godwin opened an account at Drexel in the name of the Trust and between April 1985 and October 1986 purchased approximately $1,800,000 worth of highly rated municipal tax-exempt bonds
 The complaint further alleges that, starting in late 1986, Gallagher urged Godwin to purchase for the Trust investments in tax shelters, including limited partnerships, and investment funds, representing that investments could be made from the income of the Trust's bond portfolio. Without authorization, Gallagher transferred assets from the bond portfolio into a margin account to purchase these investments, and "churned" the account by investing in high-risk ventures which generated high fees and earnings for Gallagher and Drexel. The value of the assets in the Trust declined from approximately $2,000,000 in August 1987 to $200,000 in January 1988, when the bonds were sold to meet margin calls made on the Trust's account.
 The complaint asserts that Godwin also delivered eight checks for $20,000 each to Gallagher in January 1987 to establish accounts for his grandchildren. Gallagher instead used the $160,000 to reduce the debit balance in the Trust's margin account.
 The complaint finally contends that Gallagher purposefully concealed the details of all these transactions from O.W. Godwin, the only Trust plaintiff with whom he had dealt.
 
 
 [3]
 9 U.S.C. §§ 1-15
 
 
 [4]
 The fact that the Trust was Terry and Marsha's only account does not lead to the conclusion they were acting as trustees, as Drexel urges. They were also Trust beneficiaries. In addition, their father has averred that he was creating new accounts with Drexel, to benefit the Godwin grandchildren
 
 
 [5]
 Because of our disposition of this issue and because Marsha and Terry have dropped their individual claims against Drexel, we need not address the issue of fraudulent inducement
 
 
 [1]
 The fact that the agreement bore the correct trust account number confirms the accuracy of the inference that they signed as trustees. The presence of the account number alone without any description of the account which was so numbered would not, in my view, compel the inference that Terry and Marsha signed as trustees, but its presence does reinforce the inference I draw from the surrounding circumstances