UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1056

PERDUE FARMS, INCORPORATED,

Plaintiff - Appellee,

versus

DESIGN BUILD CONTRACTING CORPORATION,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, Senior District Judge. (3:06-cv-00245)

Argued: October 30, 2007          Decided: February 8, 2008

Before WILLIAMS, Chief Judge, TRAXLER, Circuit Judge, and Louise W. FLANAGAN, Chief United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Mark Raymond Kutny, HAMILTON, MOON, STEPHENS, STEELE & MARTIN, P.L.L.C., Charlotte, North Carolina, for Appellant. George Faulkner Ritchie, IV, VENABLE, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Bentford E. Martin, HAMILTON, MOON, STEPHENS, STEELE & MARTIN, P.L.L.C., Charlotte, North Carolina, for Appellant. George E. Rahn, Jr., Gregory J. Wartman, SAUL EWING, L.L.P., Philadelphia, Pennsylvania, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Perdue Farms, Incorporated ("Perdue"), a Maryland corporation, brought an action in district court against Design Build Contracting Corporation ("Design Build"), a Tennessee corporation, for damages resulting from an alleged breach of a construction contract. Design Build now appeals the district court's denial of its motion to dismiss the complaint, or in the alternative to stay and compel arbitration. For the reasons presented below, we affirm.

I.

In March 2004, Perdue hired Design Build to perform certain architectural and construction work at Perdue's processing facility in Concord, North Carolina. The parties utilized a modified version of the American Institute of Architects Standard Form of Agreement Between Owner and Contractor (AIA Document A101-1997), and incorporated, pursuant to articles 1 and 8.1.2, a modified version of the General Conditions of the Contract for Construction (AIA Document A201-1997).

The breach of contract allegedly resulted from Design Build's default on its obligation to reimburse Perdue for monies Perdue paid directly to Design Build's subcontractors after Perdue agreed, in an October 2004 modification to the contract, to advance certain subcontractors' payments on behalf of Design Build. The

modification allowed Perdue to count direct payments to the subcontractors against the amount Perdue otherwise owed to Design Build. Perdue alleges that the monies it paid to the subcontractors exceeded the contract sum, and it seeks to recover that portion of the payments.

Perdue filed a complaint in the United States District Court for the District of Maryland on February 2, 2006. Design Build subsequently moved to dismiss for lack of jurisdiction or, alternatively, to transfer jurisdiction and stay proceedings pending arbitration. The court granted the motion in part, finding that it lacked personal jurisdiction over the non-resident defendant and venue was improper. The court transferred the case to the United States District Court for the Western District of North Carolina, where the construction site is located.

On January 8, 2007, the court rejected Design Build's renewed motion to dismiss, or in the alternative to stay and compel arbitration. The court found that it possessed the jurisdiction necessary to entertain the dispute. In rejecting Design Build's argument to the contrary, the court found that the parties' contract "eliminated . . . a broad mandatory arbitration clause," and instead conditioned arbitration on voluntary mediation. (J.A. at 70.) Because the parties chose not to mediate and, in fact, did not mediate the dispute, arbitration never was triggered. "[T]hus, the contract reveals that the parties chose not to make arbitration

3

mandatory." (Id.)  Moreover, the court found that while there is a federal policy favoring arbitration, embodied in the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), that policy does not compel arbitration where the parties' contract does not require arbitration.  (Id.)  Design Build now appeals that decision.

Two questions are before this court on appeal.  First, whether the contract's terms compel the parties to arbitrate Perdue's breach of contract claim.  If not, whether the FAA can force the parties to arbitrate the claim.  We address these questions de novo.  See Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 569 (4th Cir. 1998)("Because the examination of the scope of an arbitration agreement is primarily a task of contract interpretation, we review a district court's determination of the arbitrability of a dispute de novo.").

II

The first question we address is whether the contract's terms compel the parties to arbitrate Perdue's breach of contract claim. Article 4.6.1, which the parties deleted from the contract, set forth a broad arbitration provision, providing:

> Any claim arising out of or related to the Contract, except Claims relating to aesthetic-effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4, and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration.  Prior to arbitration, the parties shall endeavor to resolve

4

disputes by mediation in accordance with the provisions of Paragraph 4.5.

Articles 1 and 8.1.2 of AIA Document A101-1997 incorporate, in part, article 4.6.2 of AIA Document A201-1997. Design Build argues that article 4.6.2 requires Perdue's breach of contract claim to proceed through arbitration before reaching federal district court, because article 4.6.2 requires that "[c]laims not resolved by mediation shall be decided by arbitration . . . ." A claim is defined in article 4.3.1 as "a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract." Because the dispute "aris[es] out of . . . the Contract," and "seek[s] as a matter of right . . . payment of money," article 4.3.1 covers Perdue's claim for beach of contract. Design Build concludes that, because no mediation took place, the dispute should proceed to arbitration.

Perdue counters that article 4.6.2's meaning must be construed in light of article 4.5.1's permissive mediation clause. Article 4.5.1 states that a claim is subject to mediation only "if mutually agreed by the parties." The parties inserted this language in article 4.5.1 and deleted the requirement that claims be submitted to a third-party architect prior to mediation. (J.A. at 53.) Unlike article 4.6.1, which the parties deleted in its entirety,

the contract retained article 4.5.1, but premised its mediation requirement on mutual agreement.

Where a condition precedent to arbitration is not fulfilled, a party to a contract does not have a right to arbitration. See Kansas Gas Elec. Co. v. Westinghouse Elec. Corp., 861 F.2d 420, 422-23 (4th Cir. 1988)(unfulfilled condition precedent renders arbitration inappropriate). Interpreting article 4.6.2's requirement that claims "not resolved by mediation shall be decided by arbitration" in light of article 4.5.1 demonstrates that arbitration is mandatory only where the parties mutually agree to mediate the claims, in fact do attempt to mediate the claims, and fail.

Where the plain language of an article demonstrates that the purpose of the article is to limit arbitration, then such clauses will be enforced. Clinchfield Coal Co. v. Dist. 28, United Mine Workers of Am., CA-97-41-A, 1998 WL 808188, at *1 (4th Cir. Nov. 23, 1998) (unpublished decision) ("any arbitration decision must draw its essence from the parties' agreement and may not contradict the agreement's plain language") (citing United Steel Workers v. Enter. Wheel & Car Corp., 363 U.S. 593, 599 (1960)).

III

Because we answered the first question presented on appeal in the negative, we now turn to the question of whether the FAA

6

compels arbitration in this case. Congress enacted the FAA in 1925 to place arbitration agreements "upon the same footing as other contracts" and to render arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 288-89 (2002) (containing extensive discussion of legislative history)(quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). The FAA, however, "does not mandate the arbitration of all [contract] claims, but merely the enforcement . . . of privately negotiated arbitration agreements." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985).

Characterizations of the FAA which purport to give it a more robust meaning than that of simply enforcing private arbitration agreements misstate the federal policy on arbitration. "The Act was designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," and the argument that courts ought to look suspiciously on contracts avoiding arbitration "fundamentally misconceives the nature of the rights created by the FAA." Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ., 489 U.S. 468, 475 (1989). Therefore, neither section 2 of the FAA* nor any other section compels a court to stay

---

*Section 2 of the FAA, titled "Validity, irrevocability, and enforcement of agreements to arbitrate," states the following: "A written provision in any maritime transaction or a contract

litigation where the contract itself does not call for arbitration. The FAA cannot change the terms of a contract to make the contract more susceptible to arbitration.  Id. at 476.

The parties explicitly limited the instances in which they intended to arbitrate, and this limited arbitration agreement is binding.  While the FAA favors arbitration where the parties' intent is unclear, that preference cannot override a contract that clearly does not allow for arbitration in the instances in which Design Build seeks it.  For the foregoing reasons, and after careful consideration of the record, the decision below is affirmed.

AFFIRMED

---

evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

8